UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present: Judges Beales, Huff and Senior Judge Annunziata


SHELBY MARIE FINLEY

                                                    MEMORANDUM OPINION[*]
v.       Record No. 1664-19-3                              PER CURIAM
                                                         APRIL 21, 2020
RADFORD CITY DEPARTMENT
 OF SOCIAL SERVICES


                FROM THE CIRCUIT COURT OF THE CITY OF RADFORD
                          Josiah T. Showalter, Jr., Judge

           (J. Brandon Ratliff; The Ratliff Law Firm, P.L.L.C., on brief), for
           appellant.  Appellant submitting on brief.

           (Anne Park Brinckman; Joseph Z. Simmons, Guardian *ad litem* for
           the minor children; Brinkman & Brinckman, P.C.; The Simmons
           Law Firm, PC, on brief), for appellee.  Appellee and Guardian *ad
           litem* submitting on brief.


        Shelby Marie Finley (mother) appeals the circuit court's orders terminating her parental

rights to her children and approving the foster care goal of adoption.  Mother argues that the circuit

court erred by "approving the . . . permanency plan of adoption and in holding that the termination

of [mother's] parental rights was in the best interest of her children."  Upon reviewing the record

and briefs of the parties, we conclude that the circuit court did not err.  Accordingly, we affirm

the decision of the circuit court.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cty. Dep't of Human Servs., 63 Va. App. 157, 168 (2014)).

Mother and Paul Hendricks (father) are the biological parents to the two children who are the subject of this appeal.[2]  In February 2016, the Radford City Department of Social Services first became involved with the family after learning about a domestic assault between the parents.  The Department removed the older child from the parents' care, and custody of the child was transferred subsequently to an aunt.[3]  The Department closed its case.

On April 17, 2017, the Department became involved with the family again when mother and father were impaired and arrested after a domestic dispute.  Both children, who were two years old and four months old, were present at the time of the altercation.[4]  The police noticed that father had two bite marks on his shoulder and mother had a red mark on her neck, which she reported came from father choking her.  Initially the children were placed with relatives;

---

[1] The record in this case was sealed.  Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised.  Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case.  The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] The circuit court terminated father's parental rights.  Father appealed the circuit court's orders to this Court, which dismissed his appeal because of an untimely notice of appeal.  See Hendricks v. Radford City Dep't of Soc. Servs., Record No. 1923-19-3 (Jan. 13, 2020).

[3] The younger child was not born yet.

[4] Father reported that the older child had been returned to the parents' care in November 2016, but custody was never transferred to them.

however, the placements were deemed not suitable and the children entered foster care on May 12, 2017.

Also in May 2017, the circuit court convicted mother of two charges of assault and battery of a family member on November 10, 2015 and February 25, 2016, and prohibited her from having any contact with father "except in exchanging children." Despite the no contact order, mother and father continued to see one another. In February 2018, the City of Radford Juvenile and Domestic Relations District Court (the JDR court) issued child protective orders, which also prohibited contact between the parents. Approximately one week after entry of the child protective orders, father saw mother walking on the road, so he stopped his car and drove her to Walmart. Several show cause orders were issued based on the parents being together on February 16, June 13, and December 29, 2018.

In June 2017, the JDR court adjudicated that the children were abused or neglected and entered dispositional orders.

The Department provided the parents with numerous services. The Department required the parents to participate in parenting classes, random drug screens, and a "full comprehensive parental capacity evaluation." Mother completed the parenting classes. Mother had a documented history of manipulating drug screens and attempting to manipulate drug screens. The Department also referred mother to the Domestic Violence Alternatives Program, which she completed after the JDR court terminated her parental rights.

Mother participated in two comprehensive evaluations with Dr. Keith Fender.[5] Dr. Fender testified that the test results within the two evaluations were "very similar, demonstrating the same outcomes." Dr. Fender explained that in the first evaluation, mother's

_____

[5] The first evaluation was completed on November 3, 2017, and the second evaluation was completed on July 31, 2018.

- 3 -

risk factors for substance abuse were considered "high," and she was at risk for domestic violence that could be fatal. Dr. Fender opined that mother's mental health was "an issue of clinical concern" and that her symptoms raised "serious concerns that she cannot adequately parent or consistently care for herself at this time." In the second evaluation, mother minimized the domestic violence between her and father. Dr. Fender found that in the second evaluation, mother was "more resolved to say . . . that this is not a problem, this is being blown out of proportion." Dr. Fender found mother to be "entrenched in her beliefs that she has not done anything to deserve her current circumstances." Dr. Fender recommended that mother participate in individual counseling, medication management, substance abuse treatment, and a domestic violence program. He cautioned, however, that "[i]ndividuals that share [mother's] clinical presentation are often unmotivated to change and non-compliance with any future reunification plan may be anticipated."

After receiving Dr. Fender's evaluation, the Department required mother to participate in individual counseling, substance abuse treatment, and a domestic violence program. Mother informed the Department that she was receiving services for individual counseling and substance abuse treatment in Roanoke. Jessica Overturf, a counselor in Roanoke, testified that mother was screened, met with Overturf once for approximately twenty or thirty minutes, and then rescheduled and missed her other appointments before her file was "closed out." Jordana Anderson, a licensed clinical social worker, confirmed that mother was involved in substance abuse treatment for opioid addiction from February 2017 through February 2018. Mother also struggled with alcohol and had a "few positive screens;" her attendance in the program became "more sporadic" by February 2018. When the psychiatrist who oversaw the program left, mother chose to see a different psychiatrist for treatment. Mother failed a drug screen with the second

psychiatrist, and she was discharged from that substance abuse treatment program on July 2, 2018. She did not complete substance abuse treatment.

The Department arranged for mother to visit with the children. Mother was late for "a lot of visits." The Department noticed that by January 2019, the older child had become "very dysregulated, very aggressive, and was not doing well" after she visited with the parents, so the Department consulted with the child's therapist and stopped the visits. Thereafter, the child's behaviors improved.

In August 2018, the JDR court terminated mother and father's parental rights and approved the foster care goal of adoption. They appealed the JDR court's rulings to the circuit court.

On June 3, 2019, the parties appeared before the circuit court. The Department presented evidence that the children had been out of their parents' care for most of their lives.[6] The children were "doing very well" and had bonded with their foster parents, with whom they had been living since October 2018. The foster parents had expressed an interest in adopting the children.

Mother emphasized to the circuit court that she had met some of the Department's requirements, such as maintaining stable housing, participating in the Department's meetings, and completing the domestic violence class. The Department, however, remained concerned that mother had not participated in consistent counseling services or completed substance abuse

---

[6] The older child had been in foster care previously; with this matter, she entered foster care when she was two years old and was four years old at the time of the circuit court hearing. The younger child entered foster care when she was four months old and was two years old at the time of the circuit court hearing.

- 5 -

treatment.[7] Furthermore, the Department stressed that mother repeatedly had contact with father in violation of the protective orders.

Mother testified that the children entered foster care because she and father "got into an altercation," which she agreed was not the first time they had fought. She admitted that father "put his hands around [her] neck" and she "bit his neck." Mother further acknowledged that she had been convicted for assault and battery against father in the past; she also had been convicted of distribution of cocaine, forgery, passing bad checks, and assault and battery against an ex-boyfriend.

When the children entered foster care, mother was living with father, who paid the household bills. Mother subsequently obtained her own housing and stated that she had been employed "the entire time" the children had been in foster care, albeit with different employers.

After the parties presented their evidence, the circuit court allowed the parties to submit written closing arguments, which they did. The circuit court subsequently issued an eleven-page opinion letter. The circuit court found that "neither parent has completed nor followed through with appropriate, available, and reasonable rehabilitative efforts on the part of social, mental health agencies designed to reduce or prevent the neglect or abuse of the children." In addition, the circuit court found that "both parents, without good cause, have not responded to or followed through with the recommended and available treatment which would improve the capacity for adequate parental functioning." The circuit court further found that the children had been "thriving" in foster care. The circuit court terminated mother's parental rights under Code § 16.1-283(B) and (C)(2) and approved the foster care goal of adoption. This appeal followed.

---

[7] Mother believed that she had completed all the services that the Department required.

ANALYSIS

Mother argues that the circuit court erred by approving the foster care goal of adoption and finding that termination of her parental rights was in the best interests of the children. She asserts that she complied with the recommended services and that her children should be returned to her.

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

The circuit court terminated mother's parental rights under Code § 16.1-283(C)(2), which states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." Yafi, 69 Va. App. at 552 (quoting Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271 (2005)). "Considerably more 'retrospective in nature,' subsection C requires the court to determine whether the parent has been unwilling or unable to

remedy the problems during the period in which he has been offered rehabilitation services."

Toms, 46 Va. App. at 271 (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63 (2003)).

Contrary to mother's arguments, she did not substantially remedy the conditions that led to or required continuation of the children's foster care placement. The circuit court found that the Department "provided reasonable and appropriate services" to mother, but mother "failed to respond and/or complete the rehabilitative services." The Department removed the children after the parents, who were impaired at the time, were involved in a physical altercation with one another while the children were present. Mother had a history of substance abuse, so the Department required mother to complete substance abuse counseling. The circuit court found that mother did not complete this requirement. She was dismissed from one program after her participation became inconsistent and she failed additional drug screens; she was discharged from another program for failing a drug screen. The Department also required mother to participate in a domestic violence program, but she did not complete the program until after the JDR court had terminated her parental rights. Furthermore, the circuit court found that mother violated the child protective orders because she and father continued to have contact with one another. The circuit court was especially concerned by the protective order violations because Dr. Fender had testified that "domestic violence between [mother and father] was deemed a high-risk situation." Despite the available services to mother, Dr. Fender found that mother never realized the "significant, negative impact" that her actions and her relationship with father had on the children. The record supports the circuit court's ruling that despite all of the services offered, mother had not substantially remedied the situation leading to, and continuing, the children's placement in foster care.

At the time of the circuit court hearing, the children had been in foster care for approximately twenty-four months. Even after that passage of time and the considerable services the Department had provided, mother still was not in a position to care for the children. The circuit court found that the children had "spent the majority of their lives in foster care" and that they were doing "exceptionally well." "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)).

Accordingly, the circuit court did not err in terminating mother's parental rights under Code § 16.1-283(C)(2). "When a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court, and if so, we need not address the other grounds." Kilby v. Culpeper Cty. Dep't of Soc. Servs., 55 Va. App. 106, 108 n.1 (2009); see also Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 8 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). Therefore, we do not need to consider whether the circuit court erred in terminating mother's parental rights pursuant to Code § 16.1-283(B).

With respect to mother's challenge of the foster care goal of adoption, "[o]ur decision to affirm the termination order necessarily subsumes this aspect of [her] appeal because a preponderance-of-the-evidence standard governs judicial modifications of foster care plans." Toms, 46 Va. App. at 265 n.3.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

<u>Affirmed.</u>